LINK: 118

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEXCEL CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>INEOS POLYMERS, INC. f/k/a BP AMOCO POLYMERS, INC.<br><br>Defendant. | Case No. 2:09-cv-05334-MRP-RNB<br><br>ORDER RE: MOTION TO DISMISS |

## I. INTRODUCTION

On November 26, 2008, Plaintiff Hexcel Corporation filed this lawsuit against Ineos Polymers, Inc., formerly known as and hereafter referred to as BP Amoco, for illegally conspiring to fix the price of carbon fiber that it sold to Hexcel. (Docket No. 1.) The case, which was filed in the Northern District of Georgia, was transferred to Judge Florence-Marie Cooper in the Central District of California on July 22, 2009. (Docket Nos. 67-68.) On September 22, 2009, Judge Cooper granted Hexcel leave to file its First Amended Complaint ("FAC"), now the operative complaint. (Docket Nos. 115, 117.) BP Amoco's motion to dismiss followed fourteen days thereafter. (Docket No. 118.)

The case was transferred to this Court on January 25, 2010 from Judge Cooper, who is now deceased. (Docket No. 173.) The Court heard oral argument on the motion on February 8, 2010. The Court now proceeds to adjudicate the pending motion to dismiss.

## II. SUMMARY OVERVIEW

This would be a straight-forward Sherman Act section 1 case, 15 U.S.C. §1, alleging a price-fixing conspiracy in the market for carbon fiber. What complicates the case is the plaintiff's status as both a buyer and seller of carbon fiber during the period of alleged conspiracy. The defendant argues the plaintiff's acquisition of a carbon fiber producer mid-way through the period completely bars it from bringing suit because the plaintiff became a seller of carbon fiber – a competitor of the defendant – and therefore benefited from the higher prices it now challenges. The defendant relies on a litany of case law holding that a competitor does not have standing to sue another competitor for price-fixing, but also contends, even if the plaintiff could prove it suffered antitrust injury, it must also show it is an *appropriate* antitrust plaintiff. The plaintiff relies on its role as the largest consumer of carbon fiber in the United States, which arguably makes it an ideal antitrust plaintiff, and the fact that price-fixing is a *per se* violation for which injury to purchasers is presumed. Because the plaintiff passes the test for antitrust standing under *Associated General Contractors*[1], and because the Court knows of no authority holding that a direct purchaser is barred from recovering overcharges if it competed in the same price-fixed market in which it bought, the Court **DENIES** the motion to dismiss for lack of standing.

The second basis upon which the defendant brings its motion to dismiss is the statute of limitations. The defendant argues the lawsuit is time-barred. The defendant relies on the plaintiff's public disclosure of a grand jury price-fixing investigation into the carbon fiber market on March 30, 1999 as the triggering event for the statute of limitations, arguing the plaintiff was certainly on notice of its claim at the time of such announcement. The plaintiff, however, argues that it did not become aware of its claim until later – after its diligent inquiry turned up enough evidence to support the filing of a

---

[1] *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)(identifying factors for determining whether a plaintiff who has borne an injury has antitrust standing).

lawsuit under Rule 11's "good faith basis" requirement.[2]  If the defendant is correct that the March 30, 1999 disclosure is the triggering event for the statute, plaintiff has filed its lawsuit ten days too late.  Because the timing is close, and because the statute of limitations is poorly suited for resolution on the pleadings, the Court **DENIES** the motion to dismiss on that basis as well.

### III. BACKGROUND

On a motion to dismiss, the Court accepts the allegations in the complaint as true and determines whether the allegations set forth viable antitrust theories.  *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 967 (9th Cir. 2008).  According to the First Amended Complaint ("FAC"), which is the operative complaint, Plaintiff Hexcel manufactures and sells advanced structural materials to customers in different sectors of the economy, including the military, commercial aerospace, and sports and recreation sectors.  FAC ¶1.  One such composite material manufactured by Hexcel is called prepreg, which is formed by inserting resins into carbon fiber.  *Id.* ¶15.  Carbon fiber is an important ingredient in the manufacture of prepreg.  During the pertinent time period, from the early 1990s through at least 1999, Hexcel was the largest purchaser of carbon fiber in the United States.  *Id.* ¶3.

Defendant Ineos Polymers, Inc., formerly known as and hereafter referred to as BP Amoco, is a producer of carbon fiber.  *Id.* ¶2.  Hexcel alleges BP Amoco entered into an illegal agreement with the world's two largest carbon fiber manufacturers, Toray and Toho Tenax, to fix the prices and allocate markets of certain carbon fiber products sold to Hexcel.  *Id.* ¶¶4-6, 22-23.  As a result of this alleged conspiracy, BP Amoco "artificially raised and maintained the prices of the carbon fiber that it sold to Hexcel and others and it illegally eliminated price competition that would have directly benefited its customers, including Hexcel."  *Id.* ¶8.  Hexcel alleges it was injured by "paying significantly more

---

[2] *See* Fed. R. Civ. P. 11 (requiring an attorney to conduct "an inquiry reasonable under the circumstances" and certify to the best of their knowledge that "the factual contentions have evidentiary support" and the claims "are warranted by existing law").

for carbon fiber than otherwise would have been the case." *Id.* ¶9. Hexcel alleges "[b]y far the bulk of the carbon fiber Hexcel purchased from [BP] Amoco, Toray, and Toho was used for commercial aerospace applications." *Id.* ¶19.

In 1996, Hexcel purchased carbon fiber production assets from Hercules, Inc. and thus became a producer of carbon fiber. *Id.* ¶43. However, the carbon fiber that Hexcel produced after 1996 primarily served military applications and could not satisfy the requirements of Hexcel's primary commercial aerospace customers. *Id.* ¶44. Thus, even after its acquisition of Hercules, Hexcel continued to purchase carbon fiber from BP Amoco, Toray and Toho and thereafter remained the largest consumer of carbon fiber in the United States. *Id.* ¶¶43-44.

Hexcel alleges BP Amoco and its co-conspirators concealed their illegal activity for many years. *Id.* ¶¶46-52. On March 30, 1999, Hexcel disclosed to the Securities and Exchange Commission ("SEC") that Hexcel and all other carbon fiber and prepreg manufacturers were the subject of a federal grand jury price-fixing investigation. Defendant's Request for Judicial Notice ("RJN")(Docket No. 123), Exh. 2 [SEC 10-K of Hexcel Corp. at 16].[3] At that time, Hexcel conducted an internal investigation to ascertain its own antitrust exposure and to identify any evidence that other carbon fiber manufacturers had engaged in price-fixing. *Id.* ¶54(a). Hexcel entered into a joint defense agreement with its own carbon fiber suppliers and obtained documents and data from those suppliers. *Id.* ¶54(b). As a result of its "due diligence," Hexcel "became aware of circumstances establishing that it had in fact been the target and victim of a price-fixing conspiracy" sometime after 1999. *Id.* ¶54(c).

On January 24, 2003, Hexcel entered into a written agreement with BP Amoco, Toray and Toho, that modified their joint defense agreement to toll and suspend the four-year statute of limitations for any antitrust action Hexcel might bring against them. *Id.*

---

[3] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the SEC Form 10-K that Hexcel filed on March 30, 1999. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)(citing *MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

1  ¶53; RJN, Exh. 9 [Tolling Agreement].[4]  The agreement provided that the statute of
2  limitations would be tolled until thirty days after any party gave written notice to the
3  other parties of their wish to terminate. RJN, Exh. 9 ¶¶4,7. BP Amoco terminated the
4  tolling agreement as to itself on August 13, 2008, effective thirty days later or on
5  September 12, 2008. RJN, Exh. 10 [08/13/08 Letter from BP Amoco to Hexcel].[5]
6  Hexcel filed this lawsuit on November 26, 2008, seventy-five days after the tolling
7  agreement terminated. If Hexcel's cause of action accrued on March 30, 1999, the day
8  on which it disclosed the carbon fiber price-fixing investigation to the SEC in its Form
9  10-K, then Hexcel filed its lawsuit ten days *after* the statute of limitations expired.

## IV. DISCUSSION

### A. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 663-64 (9th Cir. 2008). In the past, a complaint could not be dismissed for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007), the Supreme Court expressly retired *Conley*'s "no set of facts" language and required judges to engage in a "context-specific" review of the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Pleading labels or conclusions is no longer sufficient. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[4] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the tolling agreement because it is referenced in the FAC and no party questions its authenticity. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

[5] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the termination of the tolling agreement referenced in the FAC.

claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). A court may, however, consider matters properly subject to judicial notice. *Id.*; *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the Court has taken judicial notice of the parties' tolling agreement and Hexcel's SEC Form 10-K filing, which establishes Hexcel's knowledge of a government investigation into potential price-fixing in the carbon fiber market.

Where a complaint alleges fraudulent concealment, a plaintiff is subject to the heightened pleading standards of Rule 9(b) and must plead its fraud claims with particularity. *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). For example, an allegation of fraudulent concealment requires pleading facts showing the defendant affirmatively misled the plaintiff and that plaintiff "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Id.*; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997))). With these standards in mind, the Court tests the sufficiency of the FAC.

### B. STANDING / ANTITRUST INJURY

Section 4 of the Clayton Act authorizes the award of damages under the antitrust laws: "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). Because this is a broad provision, courts have further narrowed "antitrust standing" to require a plaintiff to demonstrate that the harm the plaintiff has suffered or might suffer from the practice is an "antitrust injury," that is, an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants'

acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, the Supreme Court set forth several factors to balance when determining whether a plaintiff has antitrust standing. 459 U.S. 519, 539-45 (1983). These factors include:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall;
> (2) the directness of the injury;
> (3) the speculative measure of the harm;
> (4) the risk of duplicative recovery; and
> (5) the complexity in apportioning damages.

*American Ad Mgmt., Inc. v. Gen. Tele. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). Of course, consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003); *Big Bear Lodging Ass'n v. Snow Summit*, 182 F.3d 1096, 1102 n.4 ("[P]urchasers are preferred antitrust plaintiffs in price-fixing cases." (citing 2 PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 370 (1995))). BP Amoco's argument depends upon negating Hexcel's status as the largest consumer of carbon fiber with its later, and for a few years contemporaneous, status as a seller or competitor in the carbon fiber market.

The parties agree that no case addresses standing in the situation presented here where a plaintiff is both a purchaser and a competitor in the market for a price-fixed product except, arguably, for a very recent decision by the Ninth Circuit in *Cytec Engineered Materials, Inc. v. Hercules, Inc.*, No. 08-56200 (unpublished)(9th Cir. Nov. 18, 2009). In *Cytec*, which also addresses price-fixing in the carbon fiber market, the Ninth Circuit reversed the district court's Rule 12(b)(6) dismissal with prejudice. The district court held that the plaintiff could not satisfy the requirement of antitrust injury as a matter of law because while it purchased allegedly price-fixed carbon fiber, an ingredient in the polyacrylonitrile carbon fiber prepreg the plaintiff manufactured, it admittedly sold its composite product – the prepreg – into the same price-fixed market.

The district court emphasized that a competitor in the same industry in which an antitrust violation is alleged to have occurred cannot establish antitrust injury. *Cytec Engineered Materials, Inc. v. BP Amoco Polymers, Inc. et al.*, No. CV 07-00528-MRP-RNBx, 4/23/08 Order Granting Motion to Dismiss (Docket No. 118) at 5-6. The Ninth Circuit reversed, stating "[p]laintiff seeks to recover only for alleged price fixing in the carbon fiber market, where plaintiff was a consumer, not a competitor" and does not seek to recover for price-fixing in the prepreg market where the plaintiff was a competitor. The Ninth Circuit made a distinction between the market for the carbon fiber ingredient and the market for the prepreg composite material, while the district court found the conspiracy involved both markets. *Id.* at 7. In the instant case, Hexcel attempts to make a similar distinction between the type of carbon fiber it produces and the type of carbon fiber it purchases, arguing it did not directly compete in the same market in which it bought. This is a fact question that is ultimately irrelevant because the Court knows of no authority holding that a bona fide customer does not have standing to sue for price-fixing by virtue of its sales into the same market.

Applying the factors from *Associated General Contractors*, the Court concludes Hexcel has adequately alleged antitrust injury from price-fixing of carbon fiber. Hexcel alleges that it was the largest customer of carbon fiber in the United States and purchased more than $190 million of price-fixed carbon fiber from BP Amoco and its co-conspirators. FAC ¶3. It alleges an injury flowing from the elimination of price competition between the co-conspirators, *i.e.*, higher prices. FAC ¶¶4-9. In addition, the injury is alleged to be direct. Hexcel has alleged it was a direct purchaser of carbon fiber and purchased the fiber from BP Amoco directly. FAC ¶1. Next, the harm is not speculative because it can be measured directly by the overcharge. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 491, 494 (1968) (holding the plaintiff "proved injury and the amount of its damages for the purposes of its treble-damage suit when it proved that [the defendant] had overcharged it during the damage period and showed the amount of the overcharge."); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262

n.14 (1972) (explaining that under section 4 of the Clayton Act, whether or not a plaintiff has partially recouped its loss in some other way is not relevant to the determination of the damages); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 304 (D.D.C. 2007)("[A] direct purchaser may recover the full amount of the overcharge, even if he is otherwise benefitted [sic], because the antitrust injury occurs and is complete when the defendant sells at the illegally high price." (internal quotation marks omitted)). There is no risk of duplicative recovery because under federal law, only direct purchasers can recover overcharges. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977). In other words, none of Hexcel's customers, which purchased composite products from Hexcel that utilized carbon fiber as an ingredient, are able to recover for the overcharges that Hexcel directly paid. Finally, with respect to the complexity in apportioning damages, "*Illinois Brick*'s indirect purchaser rule serves to avoid the complications of apportioning overcharges between direct and indirect purchasers and to eliminate multiple recoveries." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998). Accordingly, the Court finds Hexcel has antitrust standing to pursue this lawsuit. The motion to dismiss for lack of standing is **DENIED**.

C. STATUTE OF LIMITATIONS

Antitrust actions under the Clayton Act must be commenced within four years after the cause of action accrued. 15 U.S.C. §15b. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). "Under the equitable doctrine of fraudulent concealment, however, the statute of limitations for a cause of action is tolled if the plaintiff proves that the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence." *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986). Passive concealment of information is not enough to toll the statute of limitations here. *Conmar*, 858 F.2d at 505. To adequately plead fraudulent concealment, Hexcel must plead facts showing that BP Amoco

affirmatively misled it and that Hexcel had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts. *Id.* at 502. "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988). In other words, "[t]here must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter*, 101 U.S. 135, 143 (1879).

      Here the alleged conspiracy, and thus the overcharges that injured Hexcel, began in the early 1990s and continued through at least 1999. Hexcel has adequately alleged with the requisite detail Rule 9(b) requires that throughout the conspiracy period, BP Amoco and its co-conspirators engaged in behavior to affirmatively conceal the nature of their illegal activity, thus tolling the statute until the grand jury subpoenas were issued in 1999. FAC ¶¶46-50. Hexcel further alleges the acts of concealment continued for years, including after the subpoenas were received. *Id.* ¶52. Hexcel does not plead the necessary "who, what, when, where, and how" BP Amoco engaged in fraudulent concealment *after* March 30, 1999,[6] however, Hexcel only needs to account for an additional ten days.

      BP Amoco contends that Hexcel obviously knew of the government investigation into the carbon fiber market before it made its March 30, 1999 disclosure to the SEC, but that the announcement itself *establishes* Hexcel was on inquiry notice as of that date. Hexcel argues that its mere knowledge of the investigation was insufficient to apprise it of its legal claims against BP Amoco, and it was not until after its diligent inquiry that it acquired a good faith basis on which to bring this suit. The Court tends to agree with BP Amoco that as of March 30, 1999, Hexcel had constructive notice of its price-fixing

---

[6] Hexcel pleads only that a Toho executive removed records from the United States in 2002 and pled guilty to obstruction of justice. *Id.* ¶51.

claims against BP Amoco. That Hexcel had not yet began its due diligence in determining the scope and nature of its claims is of no import "if it had enough information to *warrant* an investigation which, if reasonably diligent, would have led to the discovery of the fraud." *Madariaga*, 851 F.2d at 275 (emphasis added). In fact, upon receiving the grand jury subpoena, Hexcel specifically alleges the acts of due diligence in which it did engage and which did alert Hexcel that it had been the victim of a price-fixing conspiracy. *See* FAC ¶54. While the Court doubts Hexcel can prove the timeliness of its claim, it recognizes that the question of when Hexcel was on notice of the alleged conspiracy is a factual one and is not properly adjudicated at the pleadings stage. "A claim may be dismissed under Rule 12(b) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint. A complaint cannot be dismissed unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, — F.3d — , 2010 WL 114959 at *14 (9th Cir. 2010) (emphasis added)(internal quotation omitted). Because the viability of Hexcel's lawsuit depends on the factual determination of its constructive notice, and because the question is one of mere days, the Court cannot conclude at this stage in the litigation, beyond doubt, that Hexcel can prove no set of facts that would establish the timeliness of the claim.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

DATED: February 23, 2010

*/s/ Mariana R. Pfaelzer*
Hon. Mariana R. Pfaelzer
United States District Judge